The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons have any amount of form of business before the Honorable, the United States Court of Appeals for the 4th Circuit. I must adjourn now and get their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, Counsel. Good morning, Your Honor. The first in case is June. When you're ready. Good morning, and may it please the Court. Ashley Chung for the United States. The District Court held that there could not be a civil commitment hearing in this case. In its view, the proceedings to determine competency in Respondent Wayda's criminal case had taken too long. The District Court's interpretation of the statute was incorrect. Isn't that the problem? Isn't that the problem? I'm sorry, I should have raised my hand. Isn't that the problem that it has taken too long and the statute says that it must be within a reasonable time? Your Honor, I'd like to respond to that question in two ways. So first, the statute says that there should be an initial period of hospitalization for four months. And then the period of hospitalization will continue for a reasonable time until one of two things happens. Either the respondent reduces competency such that his criminal trial can proceed, or the charges are dismissed. And it's undisputed that neither of those two things happened in this case. Well, I still think perhaps you're skipping over the reasonable time part. What is a reasonable time? Here, if we look at his last four-month end date for a commitment, it was January 2018. And the certification wasn't until June 2019, 16 months later. Or if we look at when the court found that he could not be restored to competency, that was December 2018. And that's six months waiting for this civil commitment that the government could have done at any time. So what is a reasonable time? Your Honor, the reasonableness of the time it takes to determine competency depends on the facts of the case. And in this case, every period of time was used either by the government to evaluate the defendant to determine its view on competency, which the government did within the four-month time period prescribed by statute. But the statute also provides for time for WADA to build his case on competency. So after the first four months, the government experts at Butner, they told the court that WADA was competent, that he could proceed with his criminal trial. So if the court had made its final competency determination at that time, we wouldn't be here. There wouldn't be any need for a civil commitment proceeding instead of the criminal proceeding. But WADA disagreed with the government experts. So his counsel, yes, Your Honor? What happened that made six months reasonable between December 2018, when he was found by the district court not to be able to be restored to competency, and June 2019, when the civil commitment was finally determined? What happened that made that six months reasonable? So that period of time provides the government experts an opportunity to evaluate the defendant for sexual dangerousness. So the question of whether the defendant is sexually dangerous under the Adam Walsh Act is a very different question from whether he is competent to proceed with trial. So the previous examinations of the defendant during the competency proceedings were all about competence and ability to go to trial. So the government wasn't conducting a dangerousness evaluation at that point. So nobody disputes that in this case, Judge Russell issued an order committing WADA to the custody of the attorney general. And that's on page 64 of the joint appendix. And nobody disputes that Judge Russell didn't issue a subsequent order ending this commitment period. Now, the district court case, Judge Boyle thought that the continued custody of WADA was improper or unreasonable. But Judge Boyle did not have the authority to review the proceedings in the criminal case before Judge Russell. That's what this case said in Welsh. So in Welsh, the respondent was civilly certified for civil commitment under Category 1 of the Adam Walsh Act because he was in the custody of the Bureau of Prisons. After Welsh's conviction was vacated, this court said that that had no impact on Welsh's civil commitment. So even though the reason that Welsh was in the custody of the Bureau of Prisons in the first place was wrong, like what he did was not a crime, the Adam Walsh Act Civil Commitment Court had no authority to second guess. Yes, Your Honor. I have two questions. Number one, who has custody of the defendant now? And number two, if we were to agree with Judge Boyle, what happens? So WADA is still in the custody of the Attorney General. Because there was no order ending this commitment, he remains in the custody of the Attorney General. If this court were to agree with Judge Boyle, then I suppose Judge Russell in the criminal proceedings could dismiss the charges against WADA because he is incompetent and can't proceed with his criminal case. Would that activity then trigger your right to file the certificate again? In other words, once Judge Russell dismissed the charges, then could you start your civil commitment at that point? Yes, Your Honor. The government could do so. So the third category under the Adam Walsh Act are individuals who the charges against whom the charges have been dismissed due to that. Yes, Your Honor. So then where is the limit on when a civil commitment order can be issued? It sounds like there is no limit. I asked you about reasonable time, and you said it depends on the facts of the case. And knocked out six months apparently the government was evaluating him. And now in response to Judge Floyd's question, it seems like even after the charges are dismissed, then the government could pick up and issue the commitment order at that time.  Your Honor, I think that the Adam Walsh Act does provide protections for situations where the government is acting unreasonably. So the text of the statute says the hospitalization can continue for an additional reasonable period of time. And there are plenty of avenues for a respondent who doesn't think his commitment is reasonable to make those arguments. But the correct place, the correct court in which he should make those arguments is before the court that entered the order committing him to the custody of the Attorney General in the first place. And that court was the criminal court with Judge Russell. Judge Boyle had no authority to collaterally review the actions of the criminal court before Judge Russell. And I can give you a couple of examples from the joint appendix that show that Wade's counsel in his criminal proceedings had multiple opportunities to raise these arguments and chose not to. So first, turning to JA 66 and 68, after the first competency proceeding before Judge Russell, Judge Russell asked the parties to propose a schedule for resolving competency issues. So Wade's counsel could have argued that, in his view, things have taken too long. That, in his view, the court should have made a determination on competency within the first four months. And if it didn't, yes, Your Honor? Could he have filed a habeas petition during that period of time? Yes, Your Honor. He could have done that as well. He could have brought these issues to the court's attention either before Judge Russell, who could have issued an order ending the commitment, or through a habeas petition. The point is that he didn't do any of these things. Instead, what Wade's counsel did was he asked Judge Russell for more time to review the records from Butler and to have time to retain a defense expert to conduct a separate evaluation of Wade. And he asked Judge Russell to hold a second competency hearing so that Judge Russell could hear from the experts who had different opinions on Wade's competency. So Wade is perfectly entitled to take time to build his case on competency. Yes, Your Honor? So going back to the government's case for the civil commitment, I just want to make sure I understand. From December 2018 to June 2019, the government's expert was evaluating Wade for six months to determine whether he was sexually dangerous or not. Part of the time period, Wade was under active evaluation by the government experts. And then when that time period of evaluation concluded, the government experts were writing the expert report. When did the evaluation conclude? I have to check my notes, Your Honor, but my recollection is that there was an initial 45-day evaluation period. And that time period starts once Wade arrived at Butler. So after the last competency hearing and last competency order before Judge Russell, there takes a bit of time to transfer him to Butler, and then they start the 45-day evaluation period. And then the parties or the government asked Judge Russell for an extension of time, I believe an extra 30 days or so, because there were two different sets of medical experts who were evaluating Wade. So both under 4246 and 4248. So this is the period of evaluation. And then after that, it takes the government experts to take all this information they've gathered during the evaluation, review the forensic records, all the evidence from the case, and to write a lengthy and complicated report that then gets certified and sent to Judge Russell, to the court. Yes, Your Honor? During this time, why didn't you go back to Judge Russell and apprise him of what's going on, and perhaps he could have issued a scheduling order that would have protected you? I'm like Judge Sackler. I'm just trying to figure out whether six months is too long, and we don't have anything in the record that says, when we were doing this, we were doing that. So, Your Honor, Wade's counsel could have come back to Judge Russell at any time and said, this evaluation... I think Judge Floyd asked about what the government was doing that made this reasonable, not what Wade's counsel was doing that made it unreasonable. At least that was my interpretation. Judge Floyd can correct me. That's right. I understand, Your Honor. I guess the point I was trying to make is that no one is arguing in this case that that six-month period for evaluation was too long. That's not what Wade argued. I think maybe Mr. Wade would say that it's too long, that it's unreasonable. Now, I'm taking your numbers. 45 days to conduct the evaluation plus a 30-day extension is 75 days, so that's two and a half months. I'll give you two weeks to get into Butner. That's three months to do the evaluation. So then it took, I guess, three months to write this report. I've seen these reports. I'm not sure it should take three months. So I'd like to respond in two ways, Your Honor. Wade's counsel did not argue either in the proceedings with Verge Russell or in the proceedings that we're in now that it's this six-month period of the pre-certification evaluation that's unreasonable and took too long. Wade's argument now is that his commitment to the custody of the Attorney General should have ended four months after Judge Russell's first order committing him to the custody of the Attorney General. That's a separate argument and a separate time period we're dealing with. And I'd just like to go back to the specific dates that Your Honor was asking about. Yes, Your Honor? How does the Attorney General's custody end, either on its own or by some action by the Attorney General or by some action by a court? Action by the court is required to end the custody. So Judge Russell issued an order, which is on page 64 of the Joint Appendix, committing Wade to the custody of the Attorney General. And Judge Russell would have to issue another order ending this commitment. So it doesn't end just automatically or by way of law. There needs to be action taken by the court. And to give Your Honor the specific dates for the six-month period, if that's what you'd like. So on December 19, 2018, Judge Russell issued an order saying that Wade would be subject to further evaluation under Sections 42-46 and 42-48. And Wade's counsel agreed that this evaluation should take place. He didn't say it's too late to conduct any evaluation for certification. And then it took a bit of time to get Wade back to Butner. And he arrived at Butner on February 12. Okay. So from February 12 to April 27, the government was evaluating Wade. So there are experts at Butner who do the 42-46 evaluation. And there are different experts at Butner who do the 42-48 evaluation. And again, they asked Judge Russell for an extension of the 45-day period to add a 30-day extension for a total of 75 days. The experts then took the time to review all this evidence, all this evaluation data that they have collected. And they wrote a report, which was signed on June 3. So shortly thereafter, on June 11, the government certified Wade for civil commitment proceedings under the Adam Walsh Act. And again, during this six-month period, Wade was free to say to Judge Russell or in a habeas case, this is just taking too long and this period should end. The charges should be dismissed. And I should be let go. But he never raised those arguments. Yes, Your Honor. The judge in the Eastern District of North Carolina would not have jurisdiction to hear that habeas had been boarded in March of 2019. Is that your position? So in March of 2019. He's back. He got there in February, correct? Did you say that? Yes, Your Honor. So my question to you, you've gone on and on a litany of things that Wade's counsel could have done and you just mentioned habeas. So my question to you, is your position that the judge in the Eastern District of North Carolina would not have jurisdiction to hear that habeas had been boarded in March of 2019? A petition that had been filed in March of 2019. No, Your Honor. The government isn't saying that. But the point here is that. So you agree then that the court would in North Carolina have jurisdiction, correct? Yes, Your Honor, but no habeas petition was filed. I know that there's a question of jurisdiction had it been filed. Now, you're saying that the judge in the Eastern District of North Carolina had no jurisdiction to make the ruling. That was your first position this morning, was it not? It's not an issue of jurisdiction, Your Honor. That's what you said. You said the court had no jurisdiction to do anything in this case. Am I misinformed by that? I'd like to clarify, Your Honor. I didn't say jurisdiction. I said authority. Authority and jurisdiction, they're brothers and sisters, aren't they? And twins almost, aren't they? Maybe authority and jurisdiction? Can you give distinction in law in this instance that you parsed out authority versus jurisdiction? Aren't they the same? So to explain my argument, the certificate starting the civil commitment proceeding was filed in the Eastern District of North Carolina before Judge Russell. Now, Judge Russell had jurisdiction to review the certificate. We're not talking about Judge Russell. I'm sorry. I apologize. I misspoke. So Judge Boyle had jurisdiction to review the certificate, and he could address questions as to whether the certificate was filed as to someone who could be properly certified under the Adam Walsh Act. But there is a limit as to what kinds of questions are properly addressed in this context. So if you look at things like, was Wada actually committed to the custody of the Attorney General? And the answer is yes. There is an order committing him to the custody of the Attorney General. What he does not have authority to do is second guess the criminal proceedings before Judge Russell. Second guess, there are no criminal proceedings in the District of Maryland. This man was indicted in March of 2016, four years ago. Four years ago, and the government, you started this because you asked, which I think is very rare, the government asked for a competence hearing. It's kind of rare. You indicted someone in federal court for criminal charges, and you, on your own, you being the government, you asked for this competency hearing. Correct? Am I right? That's correct, Your Honor. That's sort of rare that the government would indict someone and then you off the bat, before they can have any process and go forward with a trial, a speedy trial as he's required to have. You started the process to detour that by your own motion. And now four years later, you're talking about what counsel for Mr. Wada could have done. What could the government have done? Four years later, you talk about what's pending in Maryland. Four years, you have an indictment and a supersedious indictment. And this man has not had a chance to answer before any jury, any judge on any conduct charge. And now four years later, you're telling us that the district of the Eastern District of North Carolina, a judge cannot come in and say that is untimely, it is unjust, it is inappropriate under the statute. Is that your position? The government's position? I'd like to respond in a couple of ways, Your Honor. When the government first asked Judge Russell to evaluate Wada's competency, this wasn't an attempt to delay the criminal proceedings or to prevent Wada from going to his criminal trial. The government has a responsibility to only pursue a criminal trial against a defendant who is competent to participate in those proceedings. And after that first competency hearing, Judge Russell agreed that Wada was incompetent. So it was not appropriate to continue with the criminal process at that time. That's why, I'm sorry, Your Honor, I believe you have a question, but I can't hear you. Did you object to the finding of competency before judging in the District of Maryland? Did you object to that finding? Did the government object to the finding that he was competent? So the first finding that Judge Russell made is that he was not competent. I know what the judge found. My question is, did the government object and argue that he wasn't competent? At the first competency hearing? No, because at that time, the government experts agreed that Wada was not competent to go to trial. And that's why Judge Russell committed him to the custody of the Attorney General, as required by statute, so that the government could conduct a four-month evaluation to figure out if there was a... And after that, you filed a supersedious indictment against him, after agreeing that he was incompetent, right? No, Your Honor, that timing is not correct. Okay, I'm sorry. Go ahead. Supersedious was filed, I thought, when? November? The superseding indictment was filed in November of 2016, but Judge Russell did not issue his first order finding Wada incompetent until December 2016. So that was after the superseding indictment. And then when the government did its four-month evaluation of Wada under 4241D to determine whether there is a substantial probability of his recovery so that he could proceed with trial, the government medical experts found that at that point, Wada had gotten better, that at that point, he was competent, and that his criminal proceedings should continue. And that's exactly what the government told Judge Russell. At that point, it was Wada's counsel that disagreed with that competency evaluation. So Wada's counsel asked for more time to review the records from Butner. This is on page 66 of the joint appendix, and asked Judge Russell to hold a second competency proceeding. So Wada's counsel contributed to this delay in the competency proceedings that his new counsel now takes issue with. So this delay wasn't because the government was trying to prevent Wada from getting the criminal process that he was due, and it wasn't because we were trying to get a civil commitment that was improper. Counsel, I just want, for the record, to make sure, are you certifying on behalf of the government that in November of 2016, you didn't know that your lawyers, I mean, that your experts believed that Wada was incompetent? Is that what you're telling, is that what you're certifying that, the government position? Because you made that distinction, a month difference between, you said the supersedes was in November. So it wasn't until December that you knew that he was incompetent? That he was competent? Didn't the experts come back and say he was competent? And the judge disagreed? Not at the first competency hearing, Your Honor. So there were three separate competency hearings here. So at the first competency hearing. That was in July. In July, the order came out and said that he was not competent. The judge found he was not competent. But your experts said he was competent, correct? That's the second competency hearing, Your Honor. So yes, so at that competency hearing, the government experts thought that Wada was competent and that his criminal trial should proceed. But Wada's counsel, who had retained an expert to conduct a separate evaluation of Wada, which took time, thought that Wada was incompetent and should not go to trial. So Judge Russell held a hearing to hear from both experts to collect the evidence from both sides and make his competency determination. And he concluded that Wada remained incompetent, but that there was a substantial probability that he could regain competency to continue with the trial. And that's why... I got it. You cleared it up for me. Thank you. Okay. But I'd like to return to kind of... Are there any more questions from the court? No. Okay. Counsel, since we did pepper you a little bit, but your time was over before I started questioning you. But I'll give you 30 seconds to wind up if you'd like. Okay. I guess the last point I would just like to make is that the government is not asking the court to order Wada civilly committed under Section 4248 at this time. What the government is asking for is for the court to hold the hearing that is required by statute to give the government an opportunity to prove its case. And I'd like to give some time for rebuttal. Thank you, Ms. Jim. Thank you. Ms. Delora? Good morning, Your Honors. Can you hear me all right? I was having some audio issues earlier. Okay. Thank you. Good morning. I think the court's questions are appropriately focused on what Congress was focused on, which is the fact that we are dealing in the mental health chapter with individuals who have been accused and are presumed innocent of crimes who are often deemed unrestorable to competency, as Mr. Wada ultimately was, and who are thus particularly vulnerable to extended periods of detention. So Congress's strict timelines in these statutes reflect a concerted effort to focus the court, the parties, everyone involved, on an expeditious disposition of these issues. And that's not what happened here. It was more than four years ago. I'm sorry. I have a question. But to government's counsel's point, there were several periods here where the delay was as a result of requests from Mr. Wada's counsel. So what are we to do with that? My understanding, Your Honor, is there was only one request by Mr. Wada's criminal counsel for a three-week period to review some records. And we believe that the extension of the 42- That was the June-July 2017 time period? That's exactly right. That's the only one I saw, too. We believe that the first period, the first four-month period, which Congress directs is not to exceed four months, which is only as is necessary to determine whether there's a substantial probability someone can be restored to competency, had already run at that time. That was April of 2017. Judge Russell did ultimately make a substantial probability finding, but that was not until September of 2017, at which point he purported to start a second four-month period, which would have ended in January of 2018. And then, in any event, by December of 2018- Yes, Judge Sacker? Okay, but what about the fact, then, that you're right. These periods of commitment lasted beyond the four months each time. So what about the fact that Wada didn't object to those continuing confinements at the time? Because, Your Honor, I think in the pretrial context, there are two issues at play. One is the length of the 41D period. The other is the Bail Reform Act's provision of detention pretrial. And so until someone is deemed incompetent and unrestorable, there is some debate about whether there would be a basis for seeking release at any given time. What is more, the question of whether someone is actually certifiable under 4248A was never before Judge Russell and was never something that was addressed by the parties. So the length of the 41D period, strictly speaking, was not before the court in Maryland and was not something that was of specific relevance beyond trying to get this dealt with expeditiously. And is that because the District of Maryland is the one that actually doesn't have the authority here on that civil commitment, the sexually dangerous civil commitment order? So that couldn't have been addressed there, is that right? That's correct. And I also think it's important to consider what the government could have been doing, and I believe under the statute should have been doing, during this lengthy period of pretrial detention of Mr. Wada. Mr. Wada, in particular, was actually sent to Butner, which is where the precertifications for 4248 proceedings are conducted for the entire nation. So it cannot be said that the doctors were not present or available. I've never heard that argument from the government in this case. And I think what Congress contemplates is that during this period of determining whether someone is competent and or restorable, the government should also be acting diligently if it believes that it has a basis to file either a 4246 or a 4248 certificate. And I think particularly in the 4248 context, there are three statutory questions that must be answered before someone may be committed. And at the time that the 41D period begins, the first two questions already have a presumptive answer, because the government and the Bureau of Prisons both have access to an accused prior criminal history. They know certainly the charges that they've brought in this case, so they have a sense already if they believe that a person has committed previous acts of sexually violent conduct or child molestation. They also, at that point, have evaluated the accused for competency. So a psychologist has sat down, has evaluated, and completed a report, which would presumably include any diagnosis of what they believe might be a serious mental illness, addiction, or disorder. So the four-month period under 4241D could appear short, except for the fact that the only thing that needs to happen during that period is for the court to determine whether this person is medicable or not, and whether they can be restored to competency through some regimen of medication. Because there are certain disorders, like severe intellectual disability, that cannot be medicated, and that person would not be restorable in any event. So I think during that four-month period, it's not at all unreasonable to ask that the government also file a 46 or 48 certificate, which would just need to survive Iqbal and Twombly's pleading requirements. They would not need to do a full and comprehensive 4248 evaluation. That is something that is actually contemplated by the statute and that routinely happens in these 4248 civil commitment cases after the certification has been filed. So we believe that Congress contemplates and requires that for those who are going through the incompetency route, that their certificate be filed while a person is currently in the custody of the Attorney General pursuant to 4241D. And that's precisely to avoid exactly this circumstance, endless detention and commitment with transport back and forth and various evaluation periods starting again and again. I have two questions for you. Number one, whose custody is he in now? And number two, do you believe that it takes a court order to take the defendant out of the custody of the Attorney General? As to the first question, we believe that Mr. Wada is only in custody pursuant to the district court stay of its order, which stays his release pending disposition of this appeal. I don't believe that the 41D period requires a court order to end. And that's because if the opposite were true, the government would hold sole control over the length of the 41D period. And I don't believe that that is what Congress intended. Under the government's theory, someone who had ever in their life been committed under 41D to determine whether they could be restored would be subject to a 4246 or 4248 certificate at any point over the rest of their lives. Until they were deemed restored and go to trial, they would be subject to 41D and therefore certifiable for that reason. Once the charges have been dismissed, presumably for an endless period, the government believes that someone could be certified under that provision. And we don't think that that's what Congress intended. And that's why Congress did not specify that someone could be certified if they're under the custody of the Attorney General generally. Ordinary pretrial detainees are not subject to certification. Congress, in passing 4248, thought it necessary to specify that it was speaking only to this very particular period in time when someone is being evaluated under 4241D. And this is not a statutory construction that we alone hold. This is something that we have found in cases like Hardy, D'Onofrio, Baker, and White, which we cited in our opening and reply briefs. And contrary to the government's assertion, I believe that Welsh actually supports our argument. The Welsh case was about the time of certification. And the court in that case confirmed that it is the time of certification that governs whether a certificate is properly filed, not any subsequent proceedings that might change that status retroactively. Here we are talking precisely about when Mr. Wada was certified, June 11th, 2019. And on that date, we believe that the government had far outstripped all of the deadlines in 4241D. I believe that the government's reading of the statute reads out the substantial probability finding that Congress thought important enough to mention twice. This is a finding that must be made by the court in order to extend the period of detention under 4241D for a reasonable time. And it makes sense that that is the triggering event, because 4241D was enacted in response to Jackson v. Indiana, which was concerned with endless pretrial detention of incompetent persons. And it held that due process requires that continued detention pretrial be tied to efforts to restore competency. And because that finding was not timely made in this case, and in any event, Judge Russell agreed that Mr. Wada was not restorable in December of 2018, Mr. Wada was not in the custody of the attorney general pursuant to 4241D in June of 2019. I think it's important to view the 4241D four-month period in context of the rest of the mental health chapter. That four-month period may seem short, but it's actually the longest provided by Congress in the mental health chapter. It is the only one that I'm aware of that does not allow for any exceptions or extensions. When an initial competency determination is being made, that is a shorter timeframe, but the Bureau of Prisons is empowered to ask the court for additional time if more is necessary. The same is not true of the four-month period. Congress was clear that that period is not to exceed four months. We believe that Congress's focus throughout the mental health chapter, and specifically in 4241D, is in addressing these issues expeditiously and getting someone either to trial, to commitment if a certificate has been filed, or released if that is appropriate as soon as practicable. And we believe that the government's conduct in this case requires dismissal of the certificate. So we would ask this court to affirm the sound judgment of the district courts. I would also like to note just briefly in terms of what would happen to Mr. Wada. We had some difficulty obtaining the documents initially, but we have confirmed there are two pending cases against Mr. Wada, one in Pennsylvania and one in Delaware. We've obtained one of those detainers and have confirmation that the other case still is active. So it is our belief that Mr. Wada would be transferred to one of those detainers. So the court need not be concerned about release to the community in this case. And I believe that a published opinion from this court would go a long way in speaking to courts, parties, the Bureau of Prisons, the marshals, all involved, to understand that these deadlines are important, that they are mandatory, and that there are serious consequences if they are violated. So we, again, would ask this court to affirm. I'm happy to answer any questions that the court may have. That seemed to be non-counsel. Thank you, Ms. Larrow. Ms. Chung, you have some time reserved. Thank you, Your Honor. I'd like to address a few points that opposing counsel made. So first, opposing counsel suggests that the government is required to do an evaluation for sexual dangerousness under the Adam Walsh Act at the same time the government is evaluating Wada for competency. But those are very different questions, and that's not what the statute requires. The statute gives the government four months to determine whether Wada is competent or can be made competent to stand trial. That's what the statute says. Only when the court has made a final finding that Wada is incompetent and unrestorable will the government do a separate evaluation to determine whether Wada is sexually dangerous. But in this case, when the charges against Mr. Wada include practically every sexual exploitation statute, child pornography statute, extortion, all kinds of charges involving sexual assaults, isn't part of determining whether someone is competent to stand trial discussing with them the nature of their charges and whether they're able to assist their counsel in defense of those charges? My point is, I guess, it's not as though when he came back in December or February of 2019 for this sexually dangerous evaluation, they were starting completely fresh. They knew at that point who they were dealing with. Right? Your Honor, the government medical experts would have been aware of the charges against Wada, and that would have provided some starting point for their evaluation. But issues of competency to stand trial are different from sexual dangerousness. And consider a different case where the charges are for something unrelated to sexual misconduct, yet the defendant may have prior conduct. Yes, Your Honor. I know, but you're asking me to consider a different case now when in your earlier argument, you said that a reasonable time period depends on the facts of each case. Which is why I'm asking you about the facts of this case. I guess my point in referencing a different case, Your Honor, is that for both 4246 civil commitment proceedings, the general dangerousness statute and 4248 the Adam Walsh Act, the government does not conduct an evaluation of dangerousness or sexual dangerousness until it's clear that the criminal proceedings will not continue. And it's only when the court makes a final finding of incompetent and unrestorable that it's clear that the criminal trial cannot go forward. Otherwise, the government would be certifying individuals that the government thinks should go to trial. And the government would be put in the position of almost short-circuiting criminal proceedings and trying to switch to civil commitment too early in the process. Civil commitment is only used in lieu of the criminal proceedings. It's not something that starts in the middle of criminal proceedings. I understand. I guess I'm just stuck on trying to determine what was reasonable here. Well, Your Honor, I guess I... Yes, Your Honor. I guess that's a good question. Isn't it true that it has to be, when determining criminal sexual dangerousness, the determination of 4241, or no, the certification, I would say, on 4248, isn't 90% of the past conduct alleged and convicted of, isn't that basically what it is? You're basically saying what they have done in the past in crimes of this genre, isn't that really what it is? I'm not undermining what the experts do, but in these instances, isn't 90% based on past conduct? So the inquiry of sexual dangerousness has two parts, Your Honor. The first is whether the defendant has engaged in sexual misconduct or child molestation. And then the second part is whether the defendant suffers from a mental disease or defect that would make it difficult for him to refrain from participating in child molestation or sexual misconduct if he were to be released. So it is a two-part inquiry. And that sort of inquiry is separate from the question of whether the defendant is competent to go to trial. And I point the court to the language at the end of 4241D that says, only if at the end, if the defendant remains incompetent, then he is subject to sections 4246 and 4248. So that explains Congress's intent that only at the end of the competency proceedings, when there's a final determination that he is incompetent and will not be going to his criminal trial, only then will the government start the evaluation for certification under civil commitment. And turning to another point, there is a discussion between the court and opposing counsel about how much of the delay was caused by Waiter's counsel as opposed to by the government or by Judge Russell and the court in making competency determinations. And I want to clarify that it's not just the three-week delay where Waiter's counsel asked for more time to review the records from Butner. So I can give the specific dates, but the general point is that after each competency order from Judge Russell committing Waiter to the custody of the Attorney General for evaluation, the government did its part within the four-month window provided by statute. So the government evaluated for Waiter for four months, and then afterwards, both times, Waiter's counsel took additional time to evaluate the defendant and to produce a defense expert report. So at points, that takes two months, and only until Waiter has had time to build his case on competency and he gives that report to Judge Russell, does Judge Russell schedule a second competency hearing to take evidence from both sides? And there are periods in this prolonged period of competency determinations where Judge Russell takes five months to make a ruling, but there's no provision of the statute that puts a deadline on the court or rushes the court to make this important decision with any particular amount of time. The court was reviewing competing expert determinations on whether Waiter was competent, and the court was perfectly entitled to take the time it needed to make this important decision. And finally, we're not saying that an individual can be certified for civil commitment at any time in his life after he has been committed to the custody of the Attorney General. We're not saying that someone out on the street can be hauled back in for civil commitment. The point here is that the civil commitment period hadn't ended, because the statute says it only ends if one of two things happened. Either he gets better and goes to his criminal trial, or the charges are dismissed, and it's undisputed that neither of those things happened in this case. And for that reason, Waiter was properly committed to the custody of the Attorney General under 4241D. And if Judge Russell had dismissed the charges, the government could have certified Waiter under Category 3 because the charges had been dismissed. But again, this isn't saying that any time after the charges had been dismissed for the rest of his life, the government can haul him back in and certify him for civil commitment. Rather, courts have read, again, a reasonable period of time after the charges have been dismissed for the government to evaluate the defendant for possible civil commitment. And I'll give the court one citation to support this. So the case is Godinez-Ortiz 563 F3rd 1022 from the Ninth Circuit. And that court said, after the charges have been dismissed, the government has time to evaluate for civil commitment. So the point is that the government had nothing to gain from any delay in the competency proceedings. The government would have had opportunities to certify Waiter for civil commitment either way. And my last point, Your Honor, is that since the language in 4246, the general mental health dangerousness statute is similar to the language in 4248, both rely on 4241D, commitment to the custody of the Attorney General. The court's decision in this case will impact not only Adam Walsh Act cases, but also 4246 cases. What happened here is exactly what is supposed to happen according to the statute. And this is how courts have long interpreted the statute. The government is now facing several motions to dismiss 4246 cases based on Judge Boyle's reasoning about timing. So we would ask this court to correct Judge Boyle's incorrect reading of the statute and to reverse. If there are no further questions, thank you, Your Honor. Thank you, counsel. Thank you both, counsel. In lieu of our normal tradition of coming down and shaking your hand, I hope you'll pardon that in these circumstances. But know that we are appreciative of your fine arguments and being here in particular under these circumstances in the technical world. You performed well and the technology went well. And we thank you very much and be safe and stay well. Thank you, counsel. Thank you very much. Thank you.
judges: Roger L. Gregory, Henry F. Floyd, Stephanie D. Thacker